**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Wicue USA, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> The Partnerships and Unincorporated Associations Identified On Schedule A, <br><br> Defendant. | **CASE NO.** 24-cv-9029 <br><br> **Judge**: Honorable Andrea R. Wood <br><br> **Magistrate Judge:** Honorable Keri L. Holleb Hotaling |

**DEFENDANTS' SUPPLEMENTAL SUBMISSION REGARDING INSUFFICIENCY OF THE $10,000 BOND**

Pursuant to this Court's Order during the telephonic hearing on November 7, 2025, the appearing Defendants Cheerfun and its client Souelyire-AX respectfully submit this supplemental statement, supported by new declarations, to address the gross insufficiency of the $10,000 bond currently in place.

As the Court astutely noted, the data quantifying the harm to Defendants is directly relevant to the "equitable arguments" that Defendants would have made at a properly contested TRO hearing—a hearing they were "wrongfully deprived of". The attached declarations (filed concurrently) from just two of the appearing Defendants, CheerFun LLC and Souelyire-AX , paint a devastating picture of quantifiable and imminent harm that dwarfs the current bond.

Furthermore, a new declaration from a third-party factory owner, Mr. Longhui Chen, provides dispositive evidence that Plaintiff's misrepresentations were not an "innocent mistake" but a deliberate, systematic strategy of bad faith.

1

I. **The Quantifiable, Imminent Harm Exceeds $2 Million**

The Court's order to post a bond under Federal Rule of Civil Procedure 65(c) is intended to secure payment for costs and damages to a party "who is found to have been wrongfully enjoined or restrained". The declarations submitted by Defendants demonstrate that the $10,000 bond is untethered from reality, representing a fraction of the harm these businesses face.

The two declarations from Defendants CheerFun and Souelyire-AX quantify the following:

1. **Defendant Souelyire-AX:** This defendant's business is substantial. From November 2024 to October 2025, its average monthly sales were **$289,954**. Critically, its sales during last year's peak holiday season—the very season this TRO now freezes—were **$797,409** in November 2024 and **$1,163,757** in December 2024. With 230,000 units of inventory now, Souelyire-AX projects its sales losses for November and December 2025 to be **$1,961,166**. See Decl. of Jiang Lei ¶ 3-4, 6.

2. **Defendant CheerFun LLC:** This defendant faces a similar, proportionally catastrophic loss. Its sales during last year's peak season were **$24,216.13** in November 2024 and **$41,215.51** in December 2024. Based on this data, its projected sales losses for the impending November and December 2025 holiday season are **$65,431.64**. See Decl. of Zhanyue Li ¶ 3-4, 6.

The combined, quantifiable, and imminent projected loss for just these two defendants exceeds $2,026,597. The $10,000 bond set by Plaintiff represents less than 0.5% of this imminent harm. This financial data underscores the "significant damages" counsel referenced and provides the factual basis for the "equitable arguments" the Court was prevented from hearing.

II. **The Irreparable (Non-Monetary) Harm Compounds the Damage**

Beyond the quantifiable losses, the TRO will inflict classic irreparable harm that money cannot remedy. The "balance of harms" weighs overwhelmingly against the Plaintiff, who (as the declarations attest) appears to be a "shell" company with a mailbox address, while the Defendants are legitimate businesses being driven into the ground.

Defendant Souelyire-AX attests that its product is currently ranked No. 4 in its Amazon (U.S.) subcategory. See Decl. of Jiang Lei ¶ 7. This ranking, which represents years of investment in product quality and customer goodwill, will be permanently lost. Both Defendants attest that the TRO will cause an immediate "drop in ranking, customer loss, and damage to our goodwill, all of which constitute irreparable harm not adequately remediable by monetary damages". This is precisely the type of catastrophic, business-ending harm that a Court must weigh in a contested "balance of equities" analysis. *Id*.

### III. New Evidence Confirms Plaintiff's Deliberate, Bad-Faith Misrepresentations

The harm to Defendants is the direct result of Plaintiff's calculated misrepresentations to the Court. Plaintiff's counsel attempted to frame the inclusion of CheerFun as an "innocent mistake" based on a "copycat" listing. The declaration of Longhui Chen and Weisheng Xie prove this narrative is false and that Plaintiff's bad faith was far more extensive.

Mr. Chen is the legal representative of Shenzhen Leyixie Technology Co., Ltd. ("Leyixie"). Leyixie is not only a supplier to two other Defendants in this case (Defendant 27, "PINKCAT," and Defendant 28, "EooCoo US"), but was also a business partner of the Plaintiff, WICUE, for years. *See* Decl. of Longhui Chen ¶ 1-4.

Mr. Chen attests to the following dispositive facts:

1. He personally knows Plaintiff WICUE's CEO (Fenghua Li) and its management (Jin Wu and Gaozhou Wu). *See* Decl. of Longhui Chen ¶ 5.

3

2. Around 2020, Plaintiff's manager, Gaozhou Wu, specifically asked Leyixie to provide its customer information—including the identities of PINKCAT and EooCoo US. *Id.*

3. The express purpose Plaintiff gave for this request was "to avoid mistakenly targeting cooperating parties in future litigation".

4. In reliance on this representation, Leyixie provided the customer information. Mr. Chen even "recorded them to Jin Wu of Wicue again" on October 28, 2024. *Id.*

Mr. Xie is the owner of Shenzhen Runfang Innovation Technology Co., Ltd. ("Runfang") ("Ruifang"). Ruifang is not only a supplier to nine other Defendants in this case (Defendant 8 "SOOOO US", Defendant 9 "Hockvill Direct", Defendant 10 "Qeiuxinys", Defendant 15 "Yetmee", Defendant 16 "LEYAOYAO US", Defendant 18 "ZHEHAO", Defendant 20 "MonShy", Defendant 23 "XinshuangUS", and Defendant 26 "Jasonwell International"), but was also a business partner of the Plaintiff, WICUE, for years. See Decl. of Longhui Chen ¶ 1-6.

Mr. Xie attests to the following dispositive facts:

1. He personally knows Plaintiff WICUE's CEO (Fenghua Li) and its management (Jin Wu). *See* Decl. of Xie ¶ 3.

2. Ruifang is the supplier of the nine other Defendants above. *See* Decl. of Xie ¶ 6.

3. For a portion of the supplies delivered to nine other Defendants above, the products were assembled/produced by Runfang using LCD films supplied by WICUE. *Id.*

4. Units built with WICUE-supplied films exhibit distinctive, readily visible characteristics that differ from units built with the other manufacturer's films, including at least the following:

4

(a) Brightness under ambient light: under the same ambient lighting, displays using WICUE films appear darker, whereas displays using the other manufacturer's films used by Runfang appear brighter.

(b) Stroke thickness and morphology: on the other manufacturer's films used by Runfang, handwriting strokes generally appear more solid/filled with steadier thickness; on WICUE films, strokes tend to be less solid (more hollow or uneven).

(c) Color tone: WICUE-film displays appear more yellowish in tone, whereas the other manufacturer's films used by Runfang appear less yellow by comparison.

In Mr. Xie's experience, the above differences are sufficiently visible in normal lighting that we can identify whether a unit uses WICUE-supplied films during ordinary visual inspection. *See* Decl. of Xie ¶ 7.

Plaintiff then did the exact opposite of its stated representation. It took this list of known entities, falsely represented to the Court that they were unknown conspirators, and had them shut down *ex parte* without notice. And because Plaintiff claims it performed pre-filing due diligence, it necessarily knew the visual distinctions and that a portion of the nine accused products incorporate WICUE films; proceeding to label these sellers "unknown conspirators" was a knowing misrepresentation to the Court.

This was not a sloppy mistake. This was a deliberate, fraudulent abuse of the *ex parte* process. This new evidence confirms that Plaintiff's conduct regarding CheerFun was not an anomaly but part of a calculated, retaliatory strategy. This is the very definition of a party being wrongfully deprived of notice.

## CONCLUSION

The $10,000 bond is manifestly insufficient to protect the appearing Defendants from the catastrophic harm inflicted by this wrongfully-obtained TRO. The evidence required to prove the bond's insufficiency also serves as the precise equitable arguments the Court was denied the opportunity to hear. The balance of harms overwhelmingly favors the Defendants, and the new evidence of Plaintiff's bad faith demonstrates the TRO was procured through fraud on the Court.

Defendants respectfully request that the Court vacate the TRO immediately. In the alternative, Defendants request the bond be increased to an amount that reflects the actual and imminent harm, which the evidence shows is, at a minimum, $2,000,000.

Respectfully submitted,

Date: November 10, 2025      By: /s/ *Jie Li*

Jie Li, Esq.
Glacier Law LLP
251 S Lake Avenue, Suite 910
Pasadena, CA 91101
jie.li@glacier.law
Tel: +1(626)750-0040

***Attorney for Defendants***

**CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2025, this was filed with the Clerk of the Court using CM/ECF, and that all counsel of record is being served in accordance with the Federal Rules of Civil Procedure.

/s/ *Jie Li*
Jie Li, Esq.