# EXHIBIT 1

# Patent License Agreement

**Licensor:** Wicue USA,Inc.

**Address:** 19223E.Colima Rd, #920, Rowland Heights, CA 91748

**Licensee:** Shenzhenshi Tugao Technology Co., Ltd.

**Address:** B52, Yousong Technology Building, No. 108, Donghuan 1st Road, Songhe Community, Longhua Subdistrict, Longhua District, Shenzhen, China

**Place of Execution:** Longgang District, Shenzhen

**Execution Date:** December 03, 2022

**Term through:** December 02, 2023

**Recitals**

The Licensor and the Licensee are hereinafter individually referred to as a "Party" and collectively as the "Parties."

**WHEREAS:**

1. The Licensor is the **owner** of the licensed patent (patent owner / the patent owner's authorized agent / a sublicensee);
2. The Licensee desires to obtain a license to practice the licensed patent; and
3. The Licensor agrees to grant the requested license to the Licensee.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements herein, the Parties hereby agree as follows:

**Article 1 Definitions**

Unless otherwise agreed by the Parties in writing, the following terms, as used in this Agreement, shall have the meanings set forth below:

1. **"This Agreement," "Execution Date," "Place of Execution," "Licensor," "Licensee," "Party,"** and **"Parties"** shall have the meanings set forth in the Recitals hereto.
2. **"Licensed Patent," "License Term," "Licensed Territory,"** and **"Licensed Activities"** shall have the meanings set forth in Article 2 of this Agreement.
3. **"Non-Exclusive License".** Within the agreed scope of the license to practice the Licensed Patent, the Licensor licenses the Licensee to practice the Licensed Patent, while reserving the

right to practice the Licensed Patent itself or to license any third party other than the Licensee to practice the Licensed Patent.

4. **"Sole License".** Within the agreed scope of the license to practice the Licensed Patent, the Licensor licenses the Licensed Patent to only one Licensee; the Licensor may, as agreed, retain the right to practice the Licensed Patent itself.

5. **"Exclusive License"** Within the agreed scope of the license to practice the Licensed Patent, the Licensor licenses the Licensed Patent to only one Licensee, and, as agreed, the Licensor shall not practice the Licensed Patent itself.

6. **"Sublicense".** The Licensee, as agreed, grants a license to the Licensed Patent under this Agreement to a third party, including its Affiliates.

7. **"Affiliate"** shall have the meaning set forth in subparagraph (1) below:

    (1) With respect to either Party, an "Affiliate" means any entity that directly or indirectly controls, is controlled by, or is under common control with such Party. "Control" means: (i) directly or indirectly owning more than fifty percent (50%) of the voting equity interests of such entity; or (ii) having the power, through equity ownership, contractual arrangements, or other means, to determine or materially influence the management or policies of such entity.

    (2) For purposes of this Agreement, "Affiliate" shall also have the meaning set forth in Exhibit A hereto.

8. **"License Fee," "Licensed Products," "Net Sales,"** and **"Net Profits"** shall have the meanings set forth in Article 3 of this Agreement.

9. **"Technical Materials"** and **"Acceptance Criteria"** shall have the meanings set forth in Article 4 of this Agreement.

10. **"Technical Services"** and **"Training"** shall have the meanings set forth in Article 5 of this Agreement.

11. **"Confidential Information"** shall have the meaning set forth in Article 6 of this Agreement.

12. **"Primary Defense Party"** and **"Assisting Defense Party"** shall have the meanings set forth in Article 10 of this Agreement.

13. **"Force Majeure"** shall have the meaning set forth in Article 12 of this Agreement.

Any other terms used in this Agreement and their meanings shall be as set forth in **Exhibit A** hereto.

**Article 2 License Grant**

1. Licensed Patent

2

The Licensed Patent under this Agreement refers to the invention, namely **MULTICOLOR LIQUID CRYSTAL WRITING DEVICE**, U.S. Patent No. **US11143898B2**, issued as a **utility patent**.

2. Form and Scope of the License Grant

Subject to the terms and conditions of this Agreement, with respect to the Licensed Patent, the Licensor hereby grants the Licensee a **non-exclusive license** to practice the Licensed Patent, subject to the following conditions:

(1) The Licensee shall practice the Licensed Patent only during the license term specified in this Agreement (the "License Term"). The License Term shall be from December 3, 2022 to December 2, 2023;
(2) The Licensee shall practice the Licensed Patent only within the licensed territory specified in this Agreement (the "Licensed Territory"). The Licensed Territory shall be United States;
(3) The Licensee shall comply with the sublicensing provisions set forth in Article 2.4 of this Agreement;
(4) Any other conditions applicable to the Licensee as set forth in this Agreement.

3. Licensed Activities

With respect to the Licensed Patent, under the patent license granted pursuant to this Agreement, the Licensee may conduct the following activities (collectively, the "**Licensed Activities**") (multiple selections permitted):

(1) to make, use, offer for sale, sell, and import products falling within the scope of protection of the Licensed Patent for commercial purposes;
(2) to use the patented method of the Licensed Patent for commercial purposes;
(3) to use, offer for sale, sell, and import products directly obtained by a patented method of the Licensed Patent for commercial purposes;
(4) to make, offer for sale, sell, and import products falling within the scope of protection of the Licensed Patent (where the Licensed Patent is a design patent) for commercial purposes.

4. Sublicensing

Subject to the terms and conditions of this Agreement, with respect to sublicensing of the Licensed Patent, the Parties agree to adopt **(1)** of the following arrangements (single selection):

(1) Without the Licensor's prior written consent, the Licensee shall not grant any sublicense of the Licensed Patent to any third party; or
(2) The Licensee shall have the right to grant sublicenses to sublicensees without obtaining the Licensor's prior written consent, provided that any such sublicense shall not exceed the form and scope of the license as set forth in Article 2.2 of this Agreement.

**Article 3 License Fee and Payment**

3

1. License Fee and Payment

As consideration for the license granted under **Article 2** of this Agreement, the Licensee agrees to pay the Licensor a license fee ("**License Fee**") in the amount determined by the **higher** of the payment methods set forth in subparagraphs (1) and (2) below:

(1) Fixed Fee Payment

The Licensee shall pay the Licensor a fixed fee in the total amount of RMB ¥1,000,000.00 (One Million RMB). The License Fee shall be paid in a lump sum, and the Licensee shall pay License Fee in full amount to the Licensor no later than December 2, 2023.

(2) Royalty-Based Payment

Sales-Based Royalty: From the date of the first sale of any Licensed Product, the Licensee shall pay the Licensor, no later than December 2, 2023, an amount equal to ten percent (10%) of the gross sales revenue of Licensed Products generated during such year.

**Article 4 Confidentiality**

1. **Confidential Information** under this Agreement means all information disclosed by one Party (the "Disclosing Party"), whether orally, in writing, or by any other means, directly or indirectly, to the other Party (the "Receiving Party"), including without limitation: the specific terms of this Agreement; the execution and performance of this Agreement (excluding information lawfully disclosed through patent license recordation or similar procedures as mutually agreed by the Parties); and any technical materials or other non-public information disclosed by the Disclosing Party relating to financial, commercial, business, operational, or technical matters.

Confidential Information shall **not** include information that:

a. becomes publicly known through no act of the Receiving Party;
b. was lawfully known to the Receiving Party prior to disclosure by the Disclosing Party;
c. is lawfully obtained by the Receiving Party from a third party without breach of any confidentiality obligation; or
d. is independently developed by the Receiving Party without use of or reference to any Confidential Information and without violation of any obligation under this Agreement.

2. Unless otherwise agreed in writing by the Disclosing Party or expressly provided in this Agreement: (1) the Receiving Party shall strictly maintain the confidentiality of the Disclosing Party's Confidential Information and shall implement all necessary protective measures and confidentiality procedures; (2) the Receiving Party shall use the Confidential Information solely for purposes of performing its obligations or exercising its rights under this

Agreement; and (3) the Receiving Party shall not disclose or divulge any Confidential Information to any third party other than the Receiving Party.

      3. The Receiving Party may disclose Confidential Information only to its Affiliates, employees, directors, agents, contractors, consultants, or advisors, strictly on a need-to-know basis and solely to the extent necessary for performance of this Agreement, provided that such persons are bound by confidentiality agreements imposing obligations no less restrictive than those set forth herein.

      4. Upon completion, termination, or modification of this Agreement for any reason, the Receiving Party shall promptly return to the Disclosing Party or destroy all Confidential Information of the Disclosing Party. The Receiving Party shall also provide the Disclosing Party with a written certificate of return or destruction signed by an authorized representative of the Receiving Party.

      5. This confidentiality provision shall survive the expiration or termination of this Agreement.

**Article 5 Representations and Warranties**

The Licensor hereby represents and warrants as follows:

      (1) As of the Execution Date of this Agreement, the Licensor has full right, title, and authority to license and disclose the Licensed Patent.

      (2) The Licensed Patent is not subject to any encumbrance that would affect or restrict the license granted by the Licensor under this Agreement, and there exists no contract entered into with any third party that would affect or restrict the license granted hereunder.

      (3) The Licensor has not received any notice or threat of any claim, action, lawsuit, or legal proceeding, and is not aware of, nor has reason to be aware of, any information that would: (a) render any claim of the Licensed Patent invalid or unenforceable; (b) result in any claim of any patent application included in the Licensed Patent not being granted, or being materially limited or restricted as compared to the scope currently sought; or (c) cause the Licensee's practice of the Licensed Patent under this Agreement to infringe the lawful rights of any third party.

      (4) Following execution of this Agreement, if any third party asserts an infringement claim arising from the practice of the Licensed Patent, the Licensor shall assist the Licensee in responding to such claim and in mounting a defense, and shall use reasonable efforts to ensure that the implementation of the Licensed Patent is not adversely affected. The allocation of any resulting civil liability shall be determined by mutual consultation between the Parties, except where such infringement arises from the Licensee's practice of the Licensed Patent in violation of this Agreement.

(5) During the term of this Agreement, the Licensor shall timely notify the Licensee of any documents received from patent authorities or courts that reflect, or may reflect, changes in the legal status of the Licensed Patent, including without limitation: petitions for declaration of patent invalidity, notices of oral proceedings, office action notices, notices of deemed withdrawal, notices of rejection, and similar documents.

(6) During the term of this Agreement, the Licensor shall timely pay all patent maintenance and annuity fees to maintain the Licensed Patent in force.

**Article 6 Breach and Damages**

1 If the Licensor fails to deliver materials and/or provide technical services and training as required under this Agreement, resulting in the Licensee's inability to practice the Licensed Patent, the Licensor shall compensate the Licensee for the losses thereby incurred, including the benefits the Licensee would have obtained from practicing the Licensed Patent.

2 If the Licensor fails to maintain the Licensed Patent in force during the License Term, resulting in the complete loss of validity of the Licensed Patent, the Licensee shall have the right to terminate this Agreement and demand a refund of all License Fees paid.

3 If the Licensee fails to pay the License Fee in full and on time as required under this Agreement, the Licensee shall make full payment of the outstanding License Fee and shall pay the Licensor liquidated damages calculated at a daily rate of **three per mille (0.3%)** multiplied by the number of days in arrears.

4 If the Licensee breaches the confidentiality provisions of this Agreement, resulting in the disclosure of the Licensor's Confidential Information, the Licensee shall compensate the Licensor for all losses thereby incurred.

5 If either Party fails to perform any of its other obligations under this Agreement, such Party shall be liable to the non-breaching Party for the losses thereby incurred.

**Article 7 Taxes**

Unless otherwise agreed in this Agreement, the Parties agree that all taxes and fees arising under this Agreement shall be handled in accordance with the option set forth in subparagraph (1) below (single selection):

- (1) All taxes and fees arising under this Agreement shall be borne by the **Licensee** (Licensor / Licensee / each Party respectively).
- (2) Each Party shall independently bear all tax obligations imposed on it by applicable law.

**Article 8 Dispute Resolution**

1. The Parties agree that the governing law of this Agreement shall be determined in accordance with subparagraph (1) below (single selection):

6

(1) This Agreement shall be governed by the laws of the People's Republic of China.
(2) This Agreement is a foreign-related patent license agreement, and the Parties agree that the laws of_____ [country/region] shall apply (the place of performance of this Agreement / the place of execution of this Agreement / the laws of a neutral country or region / the laws of the respective locations of the Parties).

2. Any dispute arising during the performance of this Agreement shall be resolved through friendly consultation between the Parties. If such consultation fails, either Party may elect the following methods set forth in subparagraph (1) below (single selection):

    (1) File a lawsuit with the people's court having jurisdiction at the location of the Licensor (location of the Licensor/location of the Licensee/place of execution of this Agreement / place of performance of this Agreement);
    (2) Submit the dispute to _____ Arbitration Commission for arbitration.

**Article 9 Effectiveness, Amendment, and Termination**

1. This Agreement shall become effective as of the date it is sealed by both Parties. This Agreement is executed in **two (2) originals**, with each Party holding one (1) original, each of which shall have equal legal effect.
2. Any modification or amendment to this Agreement shall be made only by a written agreement signed by both Parties.
3. Except as otherwise provided in this Agreement, if one Party breaches its obligations hereunder, the non-breaching Party shall have the right to notify the breaching Party in writing to require performance of such obligations and assumption of corresponding liability. If the breaching Party fails to perform the relevant obligations within **[___] days** after receipt of such written notice, the non-breaching Party shall have the right to terminate this Agreement by written notice to the breaching Party.
4. The Parties confirm that this Agreement, together with any documents referenced herein, constitutes the **entire agreement** between the Parties with respect to the cooperation contemplated hereunder, and supersedes all prior or existing oral or written arrangements, agreements, drafts, warranties, representations, or understandings between the Parties relating thereto.

*(No further text on this page; the appendices and signature page follow.)*

*(No further text on this page; signature page of the Patent License Agreement.)*

**Licensor (Wicue USA, Inc.):**

By: _____

Name:_____

**Licensee (**Shenzhenshi Tugao Technology Co., Ltd.**):**

By: _____

Name:_____

This Agreement is executed by the above Licensor and Licensee on **December 3, 2022**.

# 专利实施许可合同

许可方：<u>Wicue USA,Inc.</u>

通讯地址：<u>19223E.Colima Rd,#920,Rowland Heights,CA91748</u>

被许可方：<u>深圳市兔高科技有限公司</u>

通讯地址：<u>深圳市龙华区龙华街道松和社区东环一路108号油松科技大厦B523</u>

签订地点：深圳市龙岗区

签订日期　　2022年12月3日

有效期限至　2023年12月2日



许可方、被许可方单独称"一方",合称"**双方**"。

鉴于：

(1) 许可方为许可专利的<u>权利人</u>（权利人/权利人的委托人/分许可人）。

(2) 被许可方希望获得许可而实施许可专利。

(3) 许可方同意向被许可方授予所请求的许可。

经过平等协商，双方一致同意签订本合同如下：

## 第一条　名词和术语（定义条款）

在本合同中，除非双方另有书面约定，以下术语应具有如下含义：

1. "本合同""签署日""签署地""许可方""被许可方""一方"以及"双方"应具有前言所规定的含义。

2. "许可专利""许可期限""许可区域""许可实施行为"应具有本合同第二条所规定的含义。

3. "**普通实施许可**"是指许可方在约定许可实施许可专利的范围内，许可被许可方实施该许可专利，并且保留自行实施或许可被许可方以外的单位或者个人实施该许可专利的权利。

4. "**排他实施许可**"是指许可方在约定许可实施许可专利的范围内，将该许可专利仅许可一个被许可方实施，但许可方依约定可以自行实施该许可专利。

5. "**独占实施许可**"是指许可方在约定许可实施许可专利的范围内，将该许可专利仅许可一个被许可方实施，许可方依约定不得实施该许可专利。

6. "**分许可**"是指被许可方依约定将本合同涉及的许可专利许可给包括关联方在内的第三方。

7. "**关联方**"应具有以下第 (1) 项所规定的含义：

2

(1) 就任一方而言，关联方指由该一方控制、控制该一方、或与该一方处于同一控制之下的主体。"控制"指①直接或间接持有该主体百分之五十以上的股份表决权；或②通过股份、权益，或通过合同等其他方式，拥有决定或影响该主体管理或政策的权力。

(2) 本合同所称"**关联方**"应具有本合同附件一所规定的含义。

8. "**许可费**""**许可产品**""**净销售额**""**净利润额**"应具有本合同第三条所规定的含义。

9. "**技术资料**""**验收标准**"应具有本合同第四条所规定的含义。

10. "**技术服务**""**培训**"应具有本合同第五条所规定的含义。

11. "**保密信息**"应具有本合同第六条所规定的含义。

12. "**主要应诉方**""**协助应诉方**"应具有本合同第十条所规定的含义。

13. "**不可抗力事件**"应具有本合同第十二条所规定的含义。

本合同项下的其他术语及其含义以附件一为准。

## 第二条 许可的授予

1. 许可专利

本合同项下的许可专利是指名称为 <u>MULTICOLOR LIQUID CRYSTAL WRITING DEVICE</u> 的发明创造，其专利申请号为<u>US11143898B2</u>，专利类型为<u>发明专利</u>。

2. 许可的方式与范围

在符合本合同的前提下，针对许可专利，许可方授予被许可方一项以普通实施许可方式作出的专利实施许可，该许可受限于以下条件：

3

(1)被许可方应在本合同约定的许可期限("**许可期限**")范围内实施许可专利，本合同约定的许可期限为<u>2022年12月3日至2023年12月2日</u>；

(2)被许可方应在本合同约定的许可区域("**许可区域**")范围内实施许可专利，本合同约定的许可区域为<u>美 国</u>；

(3)被许可方应当遵守本合同第二条第4款关于分许可的约定；

(4)其他根据本合同约定被许可方应当遵守的条件。

3. 许可实施行为

针对许可专利，根据本合同取得的专利实施许可，被许可方可以开展以下第<u> (1)(2)(3)(4) </u>项所示的实施行为("许可实施行为")(可多选)：

(1) 为生产经营目的制造、使用、许诺销售、销售、进口落入许可专利保护范围的产品。

(2) 为生产经营目的使用许可专利方法。

(3) 为生产经营目的使用、许诺销售、销售、进口依照许可专利方法直接获得的产品。

(4) 为生产经营目的制造、许诺销售、销售、进口落入许可专利(当许可专利为外观设计专利时)保护范围的产品。

4. 分许可

在符合本合同的前提下，针对许可专利的分许可事宜，双方同意根据以下第<u> (1) </u>项所示安排处理(单选)：

(1)未经许可方事先书面同意，被许可方不得向任何第三方授予关于许可专利的任何分许可。

(2)被许可方无需事先取得许可方书面同意，即有权向被分许可方授予分许可，该分许可不得超出本合同第二条第2项约定的方式和范围。

# 第三条　许可费及支付方式

1.许可费及支付方式

4

作为取得本合同第二条所述许可的价款，被许可方同意根据以下第(1)以及(2)项约定的付款方式孰高支付许可费（"**许可费**"）：

(1)固定费用支付

被许可方应当支付给许可方的固定费用共计(人民币¥1,000,000.00（大写：壹佰万元整），被许可方应一次性付款：截止至2023年12月2日前，被许可方应向许可方支付全部许可费。

(2)提成费用支付

销售额提成费用：自许可产品首次销售发生之日起，被许可方应在2023年12月2日前向许可方支付当年许可产品销售额的10%。

## 第四条  保密条款

1. 本合同项下的保密信息是指一方(以下简称"披露方")以口头、书面或其他方式直接或间接向另一方(以下简称"接收方")披露的所有信息；该信息包括但不限于本合同各条款的具体内容、本合同的签署及履行情况（不包括经双方协商同意后通过专利实施许可合同备案等方式所公开的信息)以及披露方所披露的技术资料和其它与财务、商业、业务、运营或技术相关的非公开信息。

保密信息不包括：

①非因接收方的披露而为公众所知的信息；
②在披露方披露以前，已为接收方正当知晓的信息；
③接收方从第三方处合法获取的信息，且不违反任何保密限制或保密义务；
④由接收方独立形成而未使用任何保密信息或者违反接收方在本合同项下任何义务的信息。

2. 除非获得披露方事先书面同意或本合同另有约定，(1)接收方应严守披露方的保密信息，并采取一切必要保密措施和保密制度予以保护；(2)接收方只能为履行本合同规定的其义务或行使本合同规定的其权利而使用任何该等保密信息；(3)接收方不得向任何接收方之外的第三方披露或泄露本合同项下的保密信息。

5

3. 接收方只能在履行本合同规定的其义务和行使本合同规定的其权利的必要范围内，向关联方/雇员/董事/代理/承包商/咨询人/顾问仅在需要知道的范围内披露披露方的保密信息，上述人员必须与接收方签订保密协议，并遵守与本条规定相符的保密和不使用义务。

4. 本合同执行完毕或因故终止、变更的，接收方应立即将披露方的所有保密信息归还披露方或销毁。同时，接收方应向披露方提供由接收方授权代表签署的关于返还或销毁的书面证明。

5. 本保密条款在本合同执行完毕或终止后持续有效。

## 第五条　陈述与保证

许可方特此作出以下陈述与保证：

（1）截至本合同签署日，许可方拥有许可和披露许可专利的完整权利。

（2）许可专利不附带将会影响或限制本合同项下的许可方许可的任何权利负担，且不存在与任何第三方签订的合同将影响或限制其在本合同项下的许可。

（3）许可方并未收到有关任何主张、起诉、诉讼或法律程序的通知或威胁，并未知晓或有理由知晓任何信息，将会：（a）导致许可专利的任何权利要求无效或不可执行；或（b）导致许可专利中的任何专利申请的任何权利要求未能被授予或与其目前申请的范围相比受到严重限制或局限；或（c）导致被许可方根据本合同对许可专利的实施侵犯第三人的合法权利。

（4）本合同签署后，若第三方针对许可专利的实施提出任何侵权控诉，许可方应当协助被许可方参与应诉和协助抗辩，尽量帮助许可专利技术实施不受影响。所导致的民事责任承担，由双方另行协商确定，但被许可方违背本合同约定方式实施导致的侵权除外。

（5）在本合同有效期间，许可方将已收到的专利管理部门或法院发出的体现许可专利法律状态变化或可能发生变化的文书(包括专利权无效宣告请求书、口头审理通知书、专利申请审查意见通知书、视为撤回通知书、驳回通知书等)信息及时告知被许可方。

（6）在本合同有效期间，许可方按时缴纳专利年费，以保持许可专利的有效性。

## 第六条　违约与损害赔偿

    1. 许可方未按照本合同约定向被许可方交付资料和/或提供技术服务与培训，导致被许可方无法实施许可专利，应当赔偿被许可方因此遭受的损失，包括被许可方实施许可专利可获得的利益。

    2. 许可方在许可期限期内未维持许可专利有效，导致许可专利全部失去效力，被许可方有权解除合同，并要求许可方返还全部许可费。

    3. 被许可方未按照本合同约定足额按时支付许可费，应当补交许可费，并按照日息3‰和逾期天数支付许可方违约金。

    4. 被许可方违反合同的保密条款，致使许可方的保密信息泄露，应当赔偿许可方因此遭受的损失。

    5. 任何一方未能履行其在本合同项下的其他义务，应当对守约方因此遭受的损失承担相应责任。

## 第七条　税费

除非本合同另有约定，双方同意本合同项下产生的一切税费按照以下第(1)项所示规定处理(单选)：

(1) 本合同项下产生的一切税费由<u>被许可方</u>(许可方/被许可方/双方各自)承担。

(2) 双方应当按照法律的规定，各自独立承担法律对其所规定的各项纳税义务。

## 第八条　争议解决

1. 双方同意按照以下第 (1) 项确定本合同所适用法律(单选)：

    (1)本合同适用中华人民共和国法律。
    (2)本合同属于涉外专利实施许可合同，双方同意适用_____国/地区(本合同履行地/本合同签署地/某个中立国家或地区的法律/双方所在地法律)法律。

7

2. 在履行本合同过程中发生争议的，双方应当友好协商解决。双方协商不成的，任何一方可采取以下第(1)  种方式处理(单选)：

   (1) 向<u>许可方所在地</u>（许可方所在地/被许可方所在地/本合同签署地/本合同履行地）具有管辖权的人民法院提起诉讼；
   (2) 提请 _____ 仲裁委员会仲裁。


### 第九条  合同的生效、变更与终止

1. 本合同自<u>双方盖章之日</u>起生效。本合同一式2份，双方各持1份，具有同等法律效力。

2. 本合同内容的任何修改或变更必须由双方书面签署同意。

3. 除本合同另有约定外，如果一方违反本合同约定的义务，另一方有权书面通知违约方要求其履行本合同约定的义务，并承担相应责任。如果违约方在收到书面通知_日内仍未履行相关义务，那么守约方有权书面通知违约方终止本合同。

4. 各方确认，本合同以及本合同中提及的任何文件组成了双方之间就本合同项下合作事项而达成的完整的合同，且本合同取代了双方在之前就该事项所达成的或存在于双方之间的所有口头或书面的安排、合同、草案、保证、陈述或谅解。


（本页以下无正文，下接本合同附件及签署页）

8

（本页无正文，为《专利实施许可合同》的签署页）

许可方（<u>Wicue USA,Inc.</u>)签章 ：



By: _____
Name:

被许可方(<u>深圳市兔高科技有限公司</u>)签章.

本协议由上述许可方与被许可方于2022年12月3日签署。

9